IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION


NAKIA PURNELL,

      Plaintiff,

      v.                           Civil Action No. 8:10-CV-03184-AW

VERIZON MARYLAND INC., *et al.*,

      Defendants.


## MEMORANDUM OPINION


Pending before the Court are three motions filed by various Defendants. First, Defendants

Verizon Maryland Inc. ("Verizon MD") and Verizon Communications Inc. ("VCI") have filed a motion

to dismiss the original Complaint. *See* Doc. No. 7. Second, after Plaintiff amended the Complaint,

Verizon MD and VCI filed a partial motion Counts I, II, and IV of the Amended Complaint as to

Verizon MD and all four Counts as to VCI. *See* Doc. No. 15. Finally, a third Defendant, La-Ron

Wilburn, has moved to dismiss Counts III and IV of the Amended Complaint. *See* Doc. No. 21. The

Court has reviewed the documents filed by the Parties and finds that no hearing is necessary. *See* Loc. R.

105(6) (D. Md. 2010). For the reasons that follow, Doc. No. 7 will be denied as moot due to the

Amended Complaint; Doc. No. 15 will be granted; and Doc. No. 21 will also be granted.


## I.    FACTUAL & PROCEDURAL BACKGROUND

The following facts are drawn from the Amended Complaint unless otherwise noted. Plaintiff

has been an employee of Verizon MD in Silver Spring, Maryland since December 1, 2003. Although the

events giving rise to the immediate action took place on June 1, 2009, Plaintiff alleges that Verizon

MD's longstanding failure to discipline errant employees (including Wilburn) laid the foundations for the events of that day. She provides several examples. First, the Verizon Call Center (Plaintiff's department) sponsored a contest called the "biggest loser" contest. Am. Compl. ¶ 4. The point of the competition was to see who could lose the most weight, and it encouraged employees to weigh each other. Under the auspices of this contest, Plaintiff asserts, without elaboration, that Verizon MD "permitted sexually harassing comments and behavior to take place." *Id.*

Furthermore, Plaintiff references two episodes that implicate not only Verizon MD, but also Wilburn. At a Verizon event in Miami, Wilburn "was known to have entered into a hot tub with a number of his female subordinates." According to Plaintiff, this occasion generated "office discussions," though the Complaint does not disclose the content or participants of these discussions, except to say that they "further contributed to the hostile work environment in Plaintiff's Department." *Id.* Furthermore, Wilburn dated, and ultimately married, a subordinate employee, despite a Verizon MD policy that "purports to prohibit management employees from dating any associate level workers." *Id.* Plaintiff describes two other instances in which Verizon MD's management-associate dating policy was flouted without consequence, leading her to infer that the policy "is ignored as a matter of course." *Id.*

Before the June 1 incident, Wilburn remarked to Plaintiff that she was wearing "painted-on jeans." *Id.* ¶ 5. Plaintiff asked Wilburn to "discontinue his conduct." *Id.* Nonetheless, on June 1, during work hours, Wilburn slapped Plaintiff on her buttocks at Verizon MD's Silver Spring office. Afterwards, he stated, "I always wanted to do this," *id.* ¶ 6, and Raouf Abdullah, her direct supervisor, then asked if he could be "next," *id.* ¶ 7. Plaintiff alleges that she suffered emotional harm as a result of this incident, and that "[b]ecause of the severity of the emotion harm, [she] was required to seek medical treatment." *Id.* ¶ 12.

Verizon MD's equal employment opportunity ("EEO") office conducted an investigation into Wilburn and Abdullah's actions. Plaintiff alleges that "management employees observed" what had taken place, yet "declined to confirm the occurrence" at their interviews. More specifically, Plaintiff claims that manager Donna Stukes had seen Wilburn slap Plaintiff on the buttocks, but denied that such an event had occurred. *Id.* ¶ 8.

Through its investigation, Verizon MD concluded, and represented to the EEOC, that although Wilburn had "inappropriately touched Ms. Purnell," the touching was "not sexually motivated" but instead was "in response to what he believed her to be leaning over and putting her finger in the supervisor's face, disrespectfully." As to Abdullah's comment requesting that he be allowed to go "next," Verizon MD found that Plaintiff's allegation "was not corroborated." *Id.* ¶ 10.

Verizon MD did not immediately remove Plaintiff from Abdullah's supervision until she requested to be moved. Furthermore, it moved Wilburn to a location one floor below where Plaintiff worked. Nonetheless, Wilburn continued to frequent Plaintiff's floor in order to supervise his team, until Plaintiff contacted Verizon MD's EEO compliance office. Consequently, contact between Plaintiff and Wilburn continued from June 1, 2009 through mid-2010. The Complaint provides one example of allegedly inappropriate conduct on Wilburn's part after June 1: "in October of 2009, Mr. Wilburn commented on Plaintiff's new haircut, noting how he liked it." *Id.* ¶ 5.

Plaintiff brought this action on November 10, 2010. *See* Compl. After Defendants Verizon MD and VCI moved to dismiss, *see* Doc. No. 7, Plaintiff amended her Complaint. Verizon MD and VCI renewed their motion to dismiss, *see* Doc. No. 15, and Wilburn has also moved for partial dismissal of the Amended Complaint, *see* Doc. No. 21.

## II.     STANDARD OF REVIEW

The purpose of a motion to dismiss is "to test the sufficiency of [the] complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, the complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

In its determination, the Court must "accept the well-pleaded allegations of the complaint as true," *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and "must construe factual allegations in the light most favorable to the plaintiff," *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court should not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), "legal conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In resolving a motion to dismiss, the Court should proceed in two steps. First, the Court should determine which allegations in the Complaint are factual allegations entitled to deference, and which are mere legal conclusions that receive no deference. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

III.    ANALYSIS

As a preliminary matter, Plaintiff's Amended Complaint renders VCI and Verizon MD's motion to dismiss the original Complaint, Doc. No. 7, moot. The Court will therefore focus its analysis on the remaining motions.

### A. VCI's motion to dismiss all Counts

VCI contends that all four Counts against it should be dismissed because it is not Plaintiff's employer and is not responsible for any of the wrongs alleged in the Amended Complaint. Plaintiff avers that VCI is her employer because it is "responsible for the creation and implementation of policies impacting Plaintiff's employment" and is therefore an "integrated enterprise" with Verizon MD. Am. Compl. ¶ 2. Thus, Plaintiff treats VCI and Verizon MD as one entity, collectively called "Verizon." *Id.* ¶ 3.

However, Plaintiff has not pled sufficient facts to support her integrated-enterprise theory of liability. In order to overcome a motion to dismiss, a complaint must contain more than just "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The factors courts consider in determining if an integrated enterprise exists include: "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control." *Thomas v. Bet Sound-Stage Restaurant/BrettCo, Inc.*, 61 F. Supp. 2d 448, 456 (D. Md. 1999). In the Amended Complaint, Plaintiff does not provide facts bearing upon any of these considerations. Instead, she derives the legal conclusion that the Verizon Defendants constitute an integrated enterprise from the equally conclusory premise that VCI is "responsible for the creation and implementation of policies impacting Plaintiff's employment." Am. Compl. ¶ 2. This is not enough to state a claim under Rule 12(b)(6).

Plaintiff urges a different outcome by appealing to *Richard v. Bell Atlantic Corporation*, 946 F. Supp. 54 (D.D.C 1996). The *Richards* complaint, like the Amended Complaint in this case, was vague and conclusory in its manner of alleging the liability of a parent corporation. Nonetheless, the court granted the plaintiffs a sixty-day period of limited discovery on the under-developed facts relating to the parent-subsidiary relationships at issue. *See id.* at 60.

Even in *Richards*, the court was clear that the complaint, as drafted, would not be permitted to go forward unless the plaintiffs could adequately amend it after the sixty days of discovery. *See id.* ("[T]he plaintiffs shall be ordered to supplement their allegations by the close of the limited discovery period to allege specifically how BAC is liable for discrimination allegedly carried out by or through its subsidiaries."). Thus, the best that Plaintiff could hope for under *Richards* would be a limited discovery period followed by either successful amendment or dismissal.

However, this case is distinguishable from *Richards* in at least one crucial respect. In *Richards*, the deficiency of the complaint was partially compensated for by the fact that both sides presented the court with a number of exhibits bearing upon the relevant parent-subsidiary relationships. In fact, on the basis of the evidence before it, the court reached a provisional conclusion that the plaintiffs could demonstrate a genuine issue of material fact on the question of whether the parent company was their employer. *See id.* at 63 ("The Court will deny the Defendants' motion for summary judgment, without prejudice, because the Plaintiffs have articulated several bases upon which BAC could be found to be their 'employer' and because there has been no formal discovery in this case." (capitalization modified from original)). Thus, it was apparent to the court that, despite the poor drafting of the complaint, the plaintiffs' allegation of parental liability had a sufficient factual basis to justify opening the doors of discovery.

In the case at bar, Plaintiff has provided no equivalent assurance, and therefore the Court

declines to order limited discovery on the issue of VCI's relationship to Verizon MD. All claims against

VCI must, therefore, be dismissed. Nonetheless, the Court's ruling is without prejudice to Plaintiff's

right to amend the Complaint, within fourteen days from the entry of this order, to allege additional facts

showing that VCI is an integrated enterprise with Verizon MD.

### B. *Verizon MD's motion to dismiss Counts I, II and IV*

In its partial motion to dismiss, Verizon MD challenges Counts I, II and IV of the Amended

Complaint. Aside from challenging these claims on their merits, Verizon MD also maintains that this

Court lacks subject-matter jurisdiction over Counts I (negligence) and IV (intentional infliction of

emotional distress) of the Amended Complaint because such claims are preempted by section 301 of the

Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §§ 185-187. Because the Court will

grant Verizon MD's motion to dismiss based on the insufficiency of the Amended Complaint's

allegations, it is unnecessary to consider LMRA preemption.[1]

### 1. Battery and intentional infliction of emotional distress ("IIED")

At the outset, it is worth mentioning that none of the pending motions to dismiss challenge the

sufficiency of the Amended Complaint to state a claim for battery against Wilburn individually.

However, Verizon MD contends that under the principles of the Maryland law of agency, it cannot be

held liable for the allegedly tortious acts of Wilburn. Generally speaking, "an employer cannot be held

vicariously liable for sexual assaults committed by its employees or one it may have given apparent

authority." *Thomas*, 61 F. Supp. 2d at 454.

---

[1] Although it is often the case that courts must address questions of subject-matter jurisdiction before reaching the merits, this is not the case when determining whether state-law claims are preempted under the LMRA. *See Childers v. Chesapeake & Potomac Tel. Co.*, 881 F.2d 1259, 1262 (4th Cir. 1989) (noting that "a federal district court has the discretion to address the validity of the alleged state-law claim during the course of its preemption inquiry").

There are exceptions to this general rule, and the Amended Complaint invokes two such

exceptions: (1) Wilburn's acts were within the scope of his employment, because it occurred during

work hours, at Verizon MD's office, with Wilburn acting in his role as Plaintiff's supervisor, *see* Am.

Compl. ¶ 17, and (2) even if Wilburn's actions were not authorized by Verizon MD at the time of their

commission, it subsequently ratified Wilburn's behavior by reporting to the EEOC that Wilburn's

conduct was not sexually motivated , *see id.* ¶ 20.

In Plaintiff's opposition to Defendants' motion to dismiss, she appears to abandon the first of

these theories and to rely exclusively on ratification. *See* Doc. No. 25 at 9-12. In any event, neither

argument is viable. First, Plaintiff's scope-of-employment theory requires that she allege, not merely

that Wilburn's actions were taken during work hours, but that they were taken "in furtherance of the

employer's business," such that they could sensibly be considered "'authorized'" by Verizon MD.

*Sawyer v. Humphries*, 587 A.2d 467, 470 (Md. 1991). Plaintiff has failed to plead how Wilburn's act of

slapping her on the buttocks furthered Verizon MD's business.

Second, Plaintiff's ratification argument is equally unconvincing. To establish ratification,

Plaintiff must aver that Verizon MD "specifically approve[d]" of Wilburn's action with "know[ledge] of

the material facts concerning that action." *Lee v. Pfeifer*, 916 F. Supp. 501, 509 (D. Md. 1996). Far from

approving of Wilburn's conduct, Verizon MD expressed the view that his touching of the Plaintiff was

"inappropriate[]." Am. Compl. ¶ 10. It is true that Verizon MD also concluded that Wilburn's touching

was "not sexually motivated," *id.*, but that is a far cry from approval. Accordingly, Plaintiff's battery

and IIED claims must be dismissed as to Verizon MD.

2. Negligent hiring, training and retention

Verizon MD requests dismissal of Plaintiff's negligent hiring, training and retention claims based on the insufficiency of the factual allegations, as well as preemption by Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17. The Court agrees with both grounds for dismissal. First of all, Count One does little more than narrate the elements of negligent hiring, training and retention: Plaintiff asserts that Verizon MD "had a duty to exercise care in the hiring, training and retention of Defendants," and that it "breached this duty of care when it hired the individual Defendants, after failing to investigate their backgrounds, and when it failed to train them, . . . [and] by continuing to retain the individual Defendants." Am. Compl. ¶ 14. Plaintiff does not provide a single well-pled fact to substantiate these "[t]hreadbare recitals of the elements." *Iqbal*, 129 S. Ct. at 1249. Consequently, the claims must be dismissed.

In any event, Count One is duplicative of Plaintiff's Title VII claims against Verizon MD and therefore is preempted. State-law negligence claims are preempted when they "do no more than attempt to impose liability on [a defendant] for its alleged failure to conform to the dictates of Title VII in its efforts to prevent sexual harassment, or to properly respond to a report of sexual harassment." *Crosten v. Kamauf*, 932 F. Supp. 676, 684 (D. Md. 1996). The reason is that negligence "is not a floating concept but is itself rooted in public policy," *Maxey v. M.H.M. Inc.*, 828 F. Supp. 376, 378 (D. Md.1993), and, "in the context of hostile environment sexual harassment, the source of the public policy [is] the statutory framework provided by Title VII and its state law counterparts," *Perry v. FTData, Inc.*, 198 F. Supp. 2d 699, 707 (D. Md. 2002). Thus, Count One must be dismissed.

### C. *Wilburn's motion to dismiss Counts III and IV*

1. Sexual harassment and retaliation under Title VII

Wilburn seeks to dismiss Plaintiff's Title VII claims against him because "supervisors are not liable in their individual capacities for Title VII violations." *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998). Title VII prohibits "employer[s]" from discriminating against employees, 42 U.S.C. § 2000e-2(a), and it defines employer to mean "a person engaged in an industry affecting commerce who has fifteen or more employees" and "any agent of such a person." *Id.* § 2000e(b) . The only way Wilburn could be viewed as an employer within the meaning of section 2000e(b) would be if he qualified as an "agent of" Verizon MD, *id.*, but *Lissau* directly held that the inclusion of the word "agent" in section 2000e(b) does "not signal a congressional desire to impose liability on individual supervisors." *Lissau*, 159 F.3d at 180.

Plaintiff concedes the overall thrust of Wilburn's argument, but appeals to an exception in which individual supervisors may be liable, under 42 U.S.C. § 1981, when they "'intentionally cause [an employer] to infringe the rights secured by § 1981.'" *Luy v. Baltimore Police Dep't*, 326 F. Supp. 2d 682, 688 (D. Md. 2004) (quoting *Carson v. Giant Food, Inc.*, 187 F. Supp. 2d 462, 483 (D. Md. 2002)). However, even assuming that this exception is available under Title VII, it does not apply. The facts, if true, show that Wilburn wronged Plaintiff, but not that he caused Verizon MD to infringe her rights in any way. Thus, Count III must be dismissed as to Wilburn.

2. IIED

Under Maryland law, Plaintiff must allege the following four elements to establish her claim for IIED: "'(1) The conduct must be intentional or reckless; (2) [t]he conduct must be extreme and outrageous; (3) [t]here must be a causal connection between the wrongful conduct and the emotional distress; (4) [t]he emotional distress must be severe.'" *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 113 (Md. 2000) (quoting *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)). Recovery under this theory of

liability "has been severely limited in Maryland," *Demby v. Preston Trucking Co.*, 961 F. Supp. 873, 882 (D. Md. 1997), and "[e]ach element must be pled and proved with specificity," *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002).

Defendants challenge the sufficiency of Plaintiff's allegations to establish the second and fourth elements. The Court agrees with Defendant as to the fourth element and finds it unnecessary to address the second element. The Amended Complaint simply states that "[b]ecause of the severity of the emotion harm, Plaintiff was required to seek medical treatment," Am. Compl. ¶ 12, but fails to provide any facts relating to the severity of emotional harm or her medical treatment with any sort of "specificity," *Arbabi*, 205 F. Supp. 2d at 466. This is fatal to her claim, because the IIED *prima facie* case requires a plaintiff to "state with reasonable certainty the nature, intensity or duration of the alleged emotional injury." *Manikhi*, 758 A.2d at 115.

Plaintiff will have an opportunity to amend the Complaint to remedy this deficiency, bearing in mind, however, that the requisite level of distress is difficult to establish: "Plaintiff must show distress that 'no reasonable man could be expected to endure.'" *Peoples v. Marjack Co., Inc.*, No. AW-08-178, 2010 WL 889567, at *8 (D. Md. Mar. 5, 2010) (quoting *Harris*, 380 A.2d at 616). Nonetheless, in its present form, the claim must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, VCI and Verizon MD's first motion to dismiss the original Complaint will be denied as moot due to the Amended Complaint; their partial motion to dismiss the Amended Complaint will be granted; and Wilburn's partial motion to dismiss the Amended Complaint will be granted.

The remaining claims are: (1) sexual harassment and retaliation under Title VII against Verizon MD; battery against Wilburn; and both of the original claims brought against Abdullah.[2] A separate order will follow.

| June 28, 2011 | /s/ |
| --- | --- |
| Date | Alexander Williams, Jr. |
| | United States District Judge |

---

[2] The Court notes that Abdullah was named as a defendant for Count III and IV, but not for Counts I and II. Abdullah has not answered Plaintiff's claims against him. Given the similarity of Plaintiff's IIED and Title VII claims against Wilburn and Abdullah, and given that those claims have been dismissed as to Wilburn, the Court has reservations as to whether the Complaint states a claim against Abdullah.